157 N.J. Super. 231 (1978)
384 A.2d 888
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CURTIS E. TRENT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1978.
Decided March 10, 1978.
*233 Before Judges MICHELS, PRESSLER and BILDER.
Mr. Alan Silber, designated counsel, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Kenneth P. Ply, Special Deputy Attorney General, argued the cause for the respondent (Mr. John J. Degnan, Attorney General of New Jersey; Mr. William F. Hyland, former Attorney General of New Jersey and Mr. Leonard D. Ronco, Acting Essex County Prosecutor, of counsel).
The opinion of the court was delivered by PRESSLER, J.A.D.
Defendant was convicted by a jury of nine separate offenses arising out of his participation with two confederates in the armed robbery of a bank during which a bank guard and one of the confederates shot and killed each other. Following the return of the verdict, *234 defendant was sentenced to consecutive life terms for the two felony murders and to concurrent prison terms for the offenses of conspiracy to commit robbery of a bank, possession of revolvers without permit and receiving stolen revolvers. The remaining four convictions were merged with the two murder convictions.
Defendant's attorney predicates this appeal on three assertions of error: first, that the conviction for the murder of the confederate must be set aside as not constituting felony murder pursuant to N.J.S.A. 2A:113-1; second, that the conviction for possession of firearms without a permit merged either with the conviction for receiving firearms or with the merged armed robbery convictions; and third, that the trial court mistakenly exercised his discretion in discharging a juror after deliberations had begun and substituting an alternate juror for the discharged juror. In addition, defendant has filed a pro se brief which argues that he was improperly denied his right to be present at every critical stage of the trial by reason of his absence from the in camera hearing which resulted in the juror's excuse.
Defendant is correct in his first contention and the State so concedes. The pertinent circumstances here are indistinguishable from those which were before the Supreme Court in State v. Canola, 73 N.J. 206 (1977), and State v. Alston, 73 N.J. 228 (1977). Accordingly, defendant is entitled to an acquittal on the second count of the indictment and a vacation of the sentence imposed on the conviction thereof.
We find no merit in the contention that the conviction for possession of firearms merged either with the conviction of receiving stolen property or the conviction of armed robbery. State v. Best, 70 N.J. 56, 66-67 (1976), expressly indicates the nonmerger of the possession charge with the armed robbery charge where firearms are involved. We are, moreover, satisfied that the elements of the crime of possession of a firearm without a permit (N.J.S.A. 2A: *235 151-41(a)) and the elements of the crime of receiving stolen property (N.J.S.A. 2A:139-1) are distinct and hence that proof of one of the crimes is neither coextensive with nor dependent upon proof of the other. See State v. Best, supra, 70 N.J. at 63. And see State v. McGee, 131 N.J. Super. 292, 299 (App. Div. 1974).
The third of defendant's contentions relating to the discharging of a juror during deliberations raises a novel issue since there has been no previous judicial construction of the 1972 amendment of R. 1:8-2(d), pursuant to which the trial court exercised its discretion. That amendment provides that
If the alternate jurors are not discharged and if at any time after submission of the case to a jury, a juror dies or a juror is discharged by the court because he is ill or otherwise unable to continue, the court may direct the clerk to draw the name of an alternate juror to take the place of the juror who is deceased or discharged.
The problem with which the trial judge was here confronted developed when, some six hours after deliberations had begun, one of the jurors sent the judge a note stating that "I am getting sick." The judge called both counsel into chambers and, on the record, advised them of her intention to question the juror in their presence in order to determine the nature of her difficulty and to instruct the jury to suspend their deliberations in the meantime. Both counsel agreeing to this procedure, the juror was brought into chambers and the following colloquy took place:
THE COURT: First of all, I just want to tell you that I received your note. Please don't in any way tell me anything that is going on in the jury room relating to deliberations.
What is wrong?
THE JUROR: I just feel nervous. I have a headache and everything. I'm just   I don't know.
THE COURT: You are just nervous and have a headache?
THE JUROR: I have a headache and feel like I want to spit up, just too emotional.
*236 THE COURT: All right. You feel if you took a break or something you'll feel better?
THE JUROR: When I close my eyes I guess I'm just too easily get emotional, you know, when children is involved because I have children myself and it just hard for me to make a decision. I'm just all upset. I tried, you know, to go through with it but just because every time I see him sitting there I can picture my son sitting there. He's about 17 and it is just too much. I can't take no more.
Subsequent questioning of the juror elicited from her the response that she might feel better in the morning after she had gotten some rest. The trial judge's observations and conclusions as to the juror's condition were couched in such statements as "She certainly is upset and she is obviously disturbed," "She is obviously emotionally and physically disturbed," and finally "She really did indicate that she really has a bias and she really can't render a fair and just decision * * * * she sees the defendant as her son and she can't make a decision."
Responding to these circumstances, defense counsel urged that since it was already five o'clock in the afternoon, the appropriate thing to do would be to disperse the jury for the evening and then determine the following morning before deliberations resumed whether or not the juror could reasonably continue. The prosecutor urged that the juror's evident distressed condition required her immediate discharge; that the substitution of an alternate should be made and that the jury thus reconstituted should forthwith recommence deliberations until the agreed-upon hour of 7 or 8 p.m. The trial court opted for the prosecutor's suggestion, stating these reasons for so doing:
I've thought about this matter and I've just decided that based upon my observations of juror number 13 she is physically and emotionally disturbed and based upon what she has told us here in chambers, that she identifies the defendant as her son and has indicated that she is so emotionally disturbed that she can't render an opinion, based upon my observation of her and what she has said, I don't *237 think that she can properly and adequately carry out her duties as a juror and even though she has indicated she might feel a little better if I excuse the jury and bring her back overnight, I really don't think taking all the factors into consideration she can change her opinion. So, therefore, I hereby find that there is good cause for excusing her and I'm going to excuse her.
The first chosen alternate claiming to be ill also, the deliberations resumed with the second chosen alternate at about 5:30 P.M. Sometime before 8 P.M., the verdict of guilty on all counts was returned.
While defendant makes a passing footnote query as to the constitutionality of the 1972 amendment of R. 1:8-2(d), it is not the validity of the rule which he here challenges[1] but rather the manner in which the trial court exercised its discretion thereunder. His argument is, in essence, that there was insufficient cause shown for the discharge *238 of a juror potentially favorable to him and that the effect of the discharge was to achieve unanimity in a guilty verdict which otherwise might not have been forthcoming.
We note at the outset that the policy debate which preceded the adoption of the amendment was settled by our Supreme Court's evident decision that its practical advantages outweighed its theoretical and speculative disadvantages. The arguments both in support of and in opposition to a mid-deliberation substitution practice were fully stated in the Report of the Supreme Court Committee on Criminal Procedure and in that of its Special Subcommittee on Jury Deliberations, 95 N.J.L.J. Index Page 341, 354-356 (1972), and were, moreover, considered at the 1972 Judicial Conference[2]. Although there was then some concern over a conjectured effect of the substitution on "jury dynamics and the relative effectiveness or ineffectiveness of the substituted juror" and a recognition of the possibility that "the availability of an alternate juror might lead a jury to encourage an intransigent member to be replaced" (95 N.J.L.J. supra, at Index Page 356), nevertheless it was the view of the Committee, evidently concurred in by the Supreme Court by way of its exercise of its rule-making power, that the technique of substitution would provide a significant and constitutionally unobjectionable mechanism for the avoidance of mistrials and was, in effect, nothing more than a logical extension of the "insurance" effected by having alternate jurors empaneled for the trial itself.
The economy motivation of the rule is certainly demonstrated here. This trial was in its tenth day when the jury commenced its deliberations. The question then is whether that economy was achieved within the intention and the spirit of the rule without prejudicing the fundamental right *239 of the defendant to a fair trial by jury. We are satisfied that it was.
The rule permits substitution of an alternate when the deliberating juror dies, becomes ill "or is otherwise unable to continue." These are, of course, precisely the circumstances mandating substitution of a juror during the trial itself. Because they relate exclusively to the personal situation of the juror himself and not to his interaction with the other jurors or with the case itself, they are ordinarily not circumstances having the capacity to affect the substance or the course of the deliberations. Hence the continuation of the trial with a substituted alternate is in these circumstances no way violative of defendant's right to trial by a fair and impartial jury. In this respect the "unable to continue" standard is much narrower than the concept of good cause requiring the discharge of prospective jurors before trial commences. "Good cause" in that context includes potential juror bias which would irremediably taint the entire jury, particularly in its deliberative process. Removal of such a juror after trial has commenced and even more particularly after deliberations have commenced cannot ordinarily repair the harm already done or presumed to have been done. Juror bias discovered during deliberations is clearly, therefore, not a circumstance susceptible to the discharge and substitution technique of the rule. Declaration of a mistrial would be the only available alternative. Since, however, the discharged juror's bias here was not against but rather in favor of defendant, he does not himself claim jury taint by reason thereof. His complaint rather is that the juror's removal deprived him of a hung jury. In short, his attempt here is to characterize this discharge and substitution as a constitutionally impermissible removal of the one intransigent juror whose continued presence might have precluded jury unanimity in the guilty verdict.
If the characterization were correct, there would be considerable merit in defendant's contention. That characterization *240 is not, however, true to the facts. The trial judge here, based on her recorded observations, was satisfied that the juror was under conditions of emotional and physical distress which made it impossible for her to continue. Those observations and the conclusions based thereon are supported by the record, and we accept them as sufficient to have justified the decision to discharge her. That her disabling distress was engendered by her identification of defendant with her own son did not make it any less incapacitating insofar as her ability to function was concerned than if the cause thereof had been totally unrelated to the trial. Nor is it argued that either her distress or its cause tainted or infected the jury as a whole, and we are unable to perceive that it in fact did. In short, it was not the fact of her bias which resulted in her removal from the jury but rather the fact that her bias incapacitated her. In this posture the situation is really no different than one in which a juror, subsequently identified as the single holdout, is discharged during deliberations because he then suffers an unrelated medical emergency. We are satisfied, therefore, that under the circumstances here defendant was not deprived of any constitutional right by the discharge and substitution and that the trial judge did not mistakenly exercise her discretion in proceeding in that manner. We nevertheless emphasize that the "unable to continue" language of the rule must be strictly construed and must ordinarily be limited to compelling circumstances which are exclusively personal to the juror in question, and hence which do not and which by their nature cannot raise the specter of either a jury taint or a substantive interference with the ultimate course of the deliberations beyond that necessarily implicit in the effect of new personalities on group dynamics.
We note, finally, defendant's argument that instead of discharging the juror at 5 P.M. as she did, the judge should have dispersed the jury for the evening and made a determination the next morning as to the juror's capacity to continue. That *241 might indeed have been a prudent course to follow. Nevertheless, the issue before us is not whether the trial judge had a better alternative but rather whether the alternative chosen was a reasonable exercise of discretion. For the reasons we have already stated we are satisfied that it was. We are, moreover, satisfied that in the circumstances the trial judge was clearly correct in denying defendant's alternative request for a mistrial which would have been needlessly wasteful.
Addressing the contention defendant raises in his pro se supplemental brief, we are satisfied that his right to be present at trial was not violated by his absence from the in camera proceeding concerning the discharged juror. The right to be present is not merely one afforded by rule, R. 3:16, but is one of constitutional dimension grounded in the Confrontation Clause of the Sixth Amendment of the Federal Constitution. See State v. Smith, 29 N.J. 561, 578 (1959), cert. den. 361 U.S. 861, 80 S.Ct. 120, 4 L.Ed.2d 103 (1959). It is, however, a right which extends not to every aspect of the proceeding but rather only to critical stages of the trial, heretofore defined by the Supreme Court as "anything * * * new to the proceeding and in conflict with * * * [the] right to be confronted by the witnesses, to be represented by counsel, and to maintain * * * [the] defense upon the merits." State v. Auld, 2 N.J. 426, 433 (1949). And see Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); Snyder v. Massachusetts, 291 U.S. 97, 106-107, 54 S.Ct. 330, 78 L.Ed. 674 (1934); Stein v. United States, 313 F.2d 518 (9 Cir.1962), cert. den. 373 U.S. 918, 83 S.Ct. 1307, 10 L.Ed.2d 417 (1963). The proceeding here was properly held in camera, no request was made below that defendant be present in chambers during the proceeding, the particular problem before the court was singularly one whose investigation and resolution may well have been impeded by defendant's presence, and there is not the slightest indication that defendant was actually prejudiced by his absence in view of the vigorous and able *242 representation of counsel in respect of the pending issue. We perceive no plain error resultant from his absence. State v. Macon, 57 N.J. 325 (1971).
The judgment of conviction of the second count of the indictment is reversed and the sentence thereon vacated. The convictions of all other counts are affirmed.
NOTES
[1] The constitutional argument is based on double jeopardy considerations, the contention being that when an alternate is substituted during deliberations defendant is not being tried by a jury of 12 but rather by either a jury of 13 or by two juries of twelve. The argument also urges that the discharge of a single juror during deliberations is in effect a discharge of the whole jury. The technique of substitution of an alternate has, however, survived constitutional challenge in other jurisdictions. See People v. Hohensee, 251 Cal. App.2d 193, 59 Cal. Rptr. 234, 241 (D. Ct. App. 1967); Blevins v. State, 259 Ind. 618, 291 N.E.2d 84, 87 (Sup. Ct. 1973). Note further that although the analogous federal rule, Fed. R. Crim. P. 24(c) appears to mandate discharge of alternates prior to the commencement of deliberatons, thereby precluding a mid-deliberation substitution, nevertheless such substitution has been sustained when stipulated to, see Leser v. United States, 358 F.2d 313 (9 Cir.1966), pet. for cert. dism. 385 U.S. 802, 87 S.Ct. 10, 17 L.Ed. 2d 49 (1966), and prejudicial error was not found simply by reason of the fact that alternates were not so discharged but were rather segregated during deliberations. See United States v. Hayutin, 398 F.2d 944 (2 Cir.1968), cert. den. 393 U.S. 961, 89 S.Ct. 400, 21 L.Ed.2d 374 (1968). Compare United States v. Lamb, 529 F.2d 1153 (9 Cir.1975). And see 8A Moore, Federal Practice (2d ed. 1965) ¶ 24.05 at 24-35 to 24-36, and 1977 supplement at 45. See also, Annotation "Alternate or Additional Jurors," 84 A.L.R.2d 1288 (1962).
[2] See Transcript, Proceedings of the New Jersey Judicial Conference, April 21, 1972.