STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
CURTIS E. TRENT, DEFENDANT-APPELLANT.

Argued January 23, 1979—Decided February 23, 1979.

Mr. *Alan Silber*, Designated Counsel, argued the cause for appellant ,(Mr. *Stanley C. Van Ness*, Public Defender, attorney).

Mr. *John S. Redden*, Assistant Prosecutor, argued the cause for respondent (Mr. *John J. Degnan*, Attorney General of New Jersey, attorney; Mr. *Donald S. Coburn*, Essex County Prosecutor, of counsel; Mr. *Marc F. Friedman*, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

CLIFFORD, J. On February 11, 1976 a security guard and one of defendant's confederates were killed in the course of an armed robbery of a bank. Defendant's convictions for felony murder of the guard, on which he was sentenced to life imprisonment, and for various other offenses in connection with the same incident, for which he received lesser concurrent terms, were affirmed by the Appellate Division, *State v. Trent*, 157 *N. J. Super.* 231 (1978). However, on the strength of our decisions in *State v. Canola*, 73 *N. J.*

206 (1977), and *State v. Alston*, 73 *N. J.* 288 (1977), defendant's second conviction for felony murder — that of the accomplice, who had been killed by the bank guard's gunfire — was set aside as not being within the felony murder rule under *N. J. S. A.* 2A:113–1. We granted certification, 77 *N. J.* 507 (1978), to review the remaining convictions, particularly as affected by the trial court's application of our "alternate juror" rule, *R.* 1:8–2,(d), and by our decision last term in *State v. Miller*, 76 *N. J.* 392 (1978).

The salient facts are adequately recited in the Appellate Division opinion. That court was concerned with whether the trial court had properly exercised its discretion in discharging one of the original twelve jurors selected to deliberate and replacing her with an alternate. Under the specific circumstances there presented and based upon the detailed factual findings made by the trial court, the substitution of an alternate juror during deliberations was held not to constitute a mistaken exercise of the trial court's discretion nor to prejudice defendant's right to a fair trial. 157 *N. J. Super.* at 240.

We need not decide whether that conclusion is correct, for we are satisfied that the convictions cannot stand in the face of what occurred after the decision to substitute an alternate juror had been made. The significant facts in that regard are that after the trial court had delivered its charge to the jury, including, of course, the two alternates who had been impanelled with the regular jurors, the twelve jurors finally selected commenced their deliberations at 10:23 A.M. Approximately six and a half hours later, at 4:45 P.M, the juror who was ultimately replaced reported by note to the trial court her inability to continue. After twice interviewing the juror in the presence of counsel, the trial court decided to excuse her. Thereupon the first alternate chosen was told of her selection and that she would "shortly go into the jury room and continue with deliberations with the other jurors", who then were recalled to the courtroom and ad-

monished (for reasons not at all clear, there being no suggestion from the jury that it was having difficulty in reaching a verdict) to put aside any bias, prejudice or emotional factor and render a verdict based upon the evidence. At no point were either the alternate or the original eleven jurors instructed on the necessity of starting their deliberations over again from the beginning.

No sooner had the first chosen alternate joined her colleagues in the jury room than she too claimed inability to continue due to illness. At that juncture the last remaining alternate juror was summoned to the courtroom alone and given the following instruction:

> THE COURT: Miss Urban, would you kindly come forward? Miss Urban, you've been an alternate juror on this case. For certain reasons one or two of the jurors have been excused for cause and you are going to be substituted as a juror on the case. So, you will go into the jury room and *continue with deliberations with the jury*. You are to abide by all the law that I have given to you and apply it to the facts in order to arrive at a fair and just verdict. (Emphasis added.)

This time no supplemental instruction whatsoever was given to the remaining eleven jurors selected originally who, as we have pointed out, had been in the jury room for about six and a half hours before their deliberations were first interrupted. Some time thereafter (the record is unclear, but it appears to have been after 6:20 P.M. and before 7:30 P.M.) the jury returned its guilty verdict.

The point of our concern is the trial court's failure to have instructed the jury to begin its deliberations anew after the final alternate juror had been substituted. This issue was not raised at trial, nor was it presented to the Appellate Division or considered by it as a ground for reversal. Defendant first made the argument in his supplemental brief filed in this Court, doubtless encouraged by two cases lending support to his position, *State v. Miller, supra,* and *State v. Lipsky,* 164 *N. J. Super.* 39 (App. Div. 1978), certif. den.

(1979), both decided after the Appellate Division decision herein; and the subject was fully aired at oral argument.

In *State v. Miller, supra,* the jury in a murder prosecution had been deliberating for approximately 75 minutes when it became necessary to replace one of the original jurors with an alternate. At that point the court told the jury it would have to "start over" in its deliberations. About 50 minutes later the jury returned with a verdict finding defendant guilty of murder in the first degree. The Appellate Division reversed but did not reach the "alternate juror" issue. In reinstating the conviction this Court held that *R.* 1:8–2(d), "in providing that for good cause shown, an alternate juror may be substituted for a regular juror after deliberations have begun, does not offend our constitutional guaranty of trial by jury", 76 *N. J.* at 406, 388 A. 2d 218 and that under the circumstances good cause had been established when the original juror asserted that his nervous and emotional condition would prevent him from rendering a fair verdict. However, we were quick to caution that "when an alternate juror is so substituted, the jury must be instructed in clear and unequivocal terms that it is to begin its deliberations anew, and that, as the trial judge stated herein, 'you are in effect going to have to start over.' " *Id.* at 407. Justice Pashman's partially concurring and dissenting opinion in the same case also emphasized the necessity that "the members of the original jury [be] instructed to begin deliberations anew when a substitution is made" in order to avoid prejudice to the defendant. *Id.* at 432.

In *State v. Lipsky, supra,* the Appellate Division reversed convictions for conspiracy to obstruct justice, perjury and subornation of perjury because of the "glaring omission * * * of an instruction to the newly constituted jury that it must begin its deliberations anew so that the jury panel would, as far as practicable, eliminate the impact of the influence of the excused juror, and consider the evidence in the context of full and complete deliberations with the

new juror." 164 *N. J. Super.* at 44. Judge Larner's opinion relied on *People v. Collins,* 17 *Cal.* 3d 687, 131 *Cal. Rptr.* 782, 552 *P.* 2d 742 (1976) for the controlling rationale, particularly the following excerpt from the California Supreme Court opinion, which we likewise adopt:

The requirement that 12 persons reach a unanimous verdict is not met unless those 12 reach their consensus through deliberations which are the common experience of all of them. It is not enough that 12 jurors reach a unanimous verdict if 1 juror has not had the benefit of the deliberations of the other 11. Deliberations provide the jury with the opportunity to review the evidence in light of the perception and memory of each member. Equally important in shaping a member's viewpoint are the personal reactions and interactions as any individual juror attempts to persuade others to accept his or her viewpoint. The result is a balance easily upset if a new juror enters the decision-making process after the 11 others have commenced deliberations. The elements of number and unanimity combine to form an essential element of unity in the verdict. By this we mean that a defendant may not be convicted except by 12 jurors who have heard all the evidence and argument and who together have deliberated to unanimity.

> [17 *Cal.* 3d at 609, 131 *Cal. Rptr.* at 786, 552 *P.* 2d at 746.]

The California Supreme Court also set forth a detailed guide for trial courts in instructing juries when an alternate is substituted during deliberations. We consider it, as did the *Lipsky* court, just and appropriate for this State:

We accordingly construe section 1089 to provide that the court instruct the jury to set aside and disregard all past deliberations and begin ·deliberating anew. The jury should be further advised that one of its members has been discharged and replaced with an alternate juror as provided by law; that the law grants to the People and to the defendant the right to a verdict reached only after full participation of the 12 jurors who ultimately return a verdict; that this right may only be assured if the jury begins deliberations again from the beginning; and that each remaining original juror must set aside and disregard the earlier deliberations as if they had not been had.

> [17 *Cal.* 3d at 694, 131 *Cal. Rptr.* at 787, 552 *P.* 2d at 747.]

We conclude that the instruction to the alternate juror to "continue with deliberations with the jury" was manifestly incorrect. The suggestion that deliberations should continue unbroken was precisely the opposite of what should have been imparted — not only to the alternate but, of course, to the remaining eleven, as the model set forth above makes plain. The absence of any instruction at all on the necessity to recommence deliberations constitutes plain error of such magnitude as to call for the reversal of defendant's convictions. See *State v. Harper,* 128 *N. J. Super.* 270 (App. Div.), certif. den., 65 *N. J.* 574 (1974) ; see also *R.* 1 :8–2 (d), which by its terms requires that when a substitution of an alternate juror is made, "the court shall give the jury such supplemental instructions as may be appropriate." The procedure followed in this case so neglects the zealously protected fundamental right of fair and impartial jury deliberations as to call for a new trial. Accordingly, the judgment below is reversed and the matter remanded to the trial court.

*For reversal and remandment*—Chief Justice HUGHES and Justices MOUNTAIN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For affirmance*—None.