723 A.2d 107 (1999)
318 N.J. Super. 167
STATE of New Jersey, Plaintiff-Respondent,
v.
Wardell HARVEY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 20, 1999.
Decided February 9, 1999.
Mordecai Garelick, Assistant Deputy Public Defender, for defendant-appellant (Ivelisse *108 Torres, Public Defender, attorney; Mr. Garelick, of counsel and on the brief).
Henry L. Warner, Assistant County Prosecutor, for plaintiff-respondent (Jeffrey S. Blitz, Atlantic County Prosecutor, attorney; Mr. Warner of counsel and on the brief).
Before Judges MUIR, Jr., KEEFE and BILDER.
The opinion of the court was delivered by BILDER, J.A.D. (retired and temporarily assigned on recall).
Following a jury trial, defendant Wardell Harvey was found guilty of possession of a firearm after having been previously convicted of aggravated assault. N.J.S.A. 2C:39-7b. On motion of the State he was sentenced to an extended term of fifteen years with a minimum of seven years. Appropriate fines and penalties were also imposed.
When Officer Rauch of the Atlantic City Police Department approached an illegally parked car to issue a summons, he observed the driver, later identified as defendant Harvey, counting small white folds of paper to the passenger. In the belief this was a narcotics transaction, Rauch knocked on the window, at which point defendant dropped the papers in his hand and brushed additional paper folds in his lap to the floor. Rauch informed the occupants they were under arrest and ordered them to place their hands on the dash board. According to Rauch, defendant, after initially complying, began reaching toward the floor, causing the officer to fear for his safety. He drew his service revolver and called for back-up. At this point, defendant started the car. Rauch opened the driver's side door and saw defendant had a revolver gripped in his left hand. A struggle ensued in which Rauch put his foot on defendant's left hand and attempted to pull him from the car. Defendant put the car into drive and caused it to move forward a short distance before it was stopped by responding back-up officers. The gun was seized from the floor of the car. The State's evidence, if accepted by the jury, established defendant's possession of a firearm beyond a reasonable doubt. Defendant does not challenge his status as a prior offender.
In his brief on appeal defendant makes the following contentions:
POINT I:
THE TESTIMONY THAT THE DEFENDANT HAD BEEN CONVICTED OF A PRIOR OFFENSE OF AGGRAVATED ASSAULT DEPRIVED HIM OF A FAIR TRIAL.
POINT II:
SINCE THE JUROR EXCUSED DURING DELIBERATIONS WAS NEITHER ILL NOR UNABLE TO CONTINUE UNDER R. 1:8-2(d), AND THE JURORS HAD ALREADY REACHED AN ADVANCED STAGE OF DELIBERATIONS, HIS REMOVAL AND REPLACEMENT WITH AN ALTERNATE JUROR VIOLATED DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL BY AN IMPARTIAL JURY. U.S. CONST. AMENDS. V, VI, XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10.

Admission of evidence of the assaultive nature of the prior conviction.
Essential to a conviction of violating N.J.S.A. 2C:39-7b is a showing by the State that defendant has been previously convicted of one of the enumerated crimes. In this case, the basis of the charge was a prior conviction of aggravated assault. The conviction itself but not its nature was a critical element of the State's case.
At the start of the trial defendant moved to bar the introduction of evidence of the nature of the prior conviction. He offered to stipulate that element of the charged offense, i.e., that defendant was a convicted felon under the predicate statute. He contended the offered stipulation rendered any evidence of the nature of the prior conviction evidentially unnecessary and unfairly prejudicial. The trial judge denied the motion, holding the prior conviction was an element of the charged offense and the State was entitled to prove all the elements.
*109 On appeal defendant contends the denial of his motion was an abuse of discretion and the unnecessary introduction of the nature of the prior offense tainted the deliberative process and denied him a fair trial. Although novel in New Jersey, the issue has been considered by the United States Supreme Court as well as the highest courts of Florida, Colorado and Wisconsin and appellate courts in Arizona, Michigan and Washington. Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L. Ed.2d 574 (1997); Brown v. State, 719 So.2d 882, 889 (Fla.1998); State v. Alexander, 214 Wis.2d 628, 571 N.W.2d 662, 668-672 (Wis.1997); State v. Root, No. 1CA-CR97-0737, 1998 WL 849790 at *2 to *5, ___ Ariz. ___, ___ _ ___, ___ P. 2d ___, ___ _ ___ (Ariz.Ct.App. Dec. 15, 1998); State v. Johnson, 90 Wash.App. 54, 950 P.2d 981, 985-986 (Wash.Ct.App.1998); People v. District Court, 953 P.2d 184, 190-191 (Colo.1998)(dicta); People v. Swint, 225 Mich.App. 353, 572 N.W.2d 666, 677 (Mich.Ct.App.1997)(dicta). All of these courts concluded, in light of an offer to stipulate the status element of the charged offense, the prejudicial effect of the disclosure of the nature of the prior conviction substantially outweighed its probative value.
Old Chief involved a federal offense similar to that for which defendant was charged and implicated Federal Evidence Rule 403, a rule which is essentially the same as N.J.R.E. 403. See Biunno, Current N.J. Rules of Evidence, 1991 Supreme Court Committee Comment to N.J.R.E. 403 (1998-1999). After examining the risks of prejudice which inhere in evidence of past convictions and considering the alternative means of proof, the United States Supreme Court concluded that stipulations are the proper method of proving the felony-convict status of a defendant:
In this case, as in any other in which the prior conviction is for an offense likely to support conviction on some improper ground, the only reasonable conclusion was that the risk of unfair prejudice did substantially outweigh the discounted probative value of the record of conviction, and it was an abuse of discretion to admit the record when an admission was available. What we have said shows why this will be the general rule when proof of convict status is at issue, just as the prosecutor's choice will generally survive a Rule 403 analysis when a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative of his thought and actions in perpetrating the offense for which he is being tried.
[519 U.S. at ___ _ ___, 117 S.Ct. at 655-656, 136 L.Ed.2d at 594-595 (footnote omitted).]
Although this question has not been dealt with by our own Supreme Court, we are not without guidance. We are satisfied that the philosophy underlying the decision in State v. Brunson, 132 N.J. 377, 625 A.2d 1085 (1993), can be fairly taken to presage an acceptance of the Old Chief view. In Brunson the Court considered the same prejudice which the United States Supreme Court considered in Old Chief, the prejudice which inheres in evidence of past convictions. The issue was viewed in the context of a challenge to the credibility of a defendant-witness but nonetheless raised the same specter of misuse by the fact finder. "Although prior-conviction evidence is effective in impeaching a defendant's credibility, concern frequently is raised about the extent to which juries consider that evidence as proof of guilt." Id. at 385, 625 A.2d 1085. Weighing the competing right of the State to impeach the defendant's credibility and the need to avoid the impermissible use of prior-conviction evidence to assess the likelihood of guilt, our Supreme Court concluded evidence of a prior conviction of an offense the same as or similar to the offense charged should be sanitized. Id. at 391, 625 A.2d 1085. The State may introduce evidence of the defendant's prior conviction limited to the degree of the crime and the date of the offense but excluding any evidence of the specific crime of which defendant was convicted. Ibid.
When the sole purpose of introducing evidence of a prior conviction is to prove defendant's status as an element of the offense and the defendant admits to that element, the probative value of the nature of the underlying offense is far outweighed by the danger of unfair prejudice. Here, the failure to bar disclosure of the nature of the defendant's *110 past crime was an abuse of discretion which deprived defendant of a fair trial and requires that the conviction be reversed.

The replacement of juror number nine.
After the jury had commenced its deliberations, the State brought two matters to the trial court's attention in an on-the-record in-camera proceeding. First, during the testimony of the State's rebuttal witness, juror number nine had been making facial gestures and the Assistant Prosecutor's detective "indicated to [him] it looked like he was mouthing the word liar." Second, as a result of these observations, the State ran a "RAP sheet" on juror number nine and learned he might be an individual with a conviction for receiving stolen property in 1963.
The Assistant Prosecutor took the position he would have challenged the juror if he had known about the conviction and now wanted him to be excused and replaced with an alternate. Over the objections of defense counsel and after it was reported the jury was deadlocked at 11-1, juror number nine was brought in and questioned. His answers revealed that he had indeed been convicted of an offense in North Carolina and been placed on probation when he was 15 years old, some 33 years earlier. Concluding the juror had deliberately falsified his responses to the court's voir dire, the trial judge excused and discharged him from the panel and substituted an alternate, stating:
I think he is deliberately and has deliberately falsified his responses to the Court. I think he did that right here before us a few minutes ago, and accordingly, I'm going to rule that he should be excused, discharged from this panel.
Defendant's motion for a mistrial was denied and an alternate seated. The reconstituted jury later returned the guilty verdict.
On appeal defendant contends this action violated R. 1:8-2(d)(1) and deprived him of a fair trial.
After a jury has commenced deliberations, R. 1:8-2(d)(1) permits the seating of an alternate "if ... a juror dies or is discharged by the court because of illness or other inability to continue." It is a Rule which is to be employed sparingly. State v. Valenzuela, 136 N.J. 458, 468, 643 A.2d 582 (1994). In State v. Trent, 157 N.J.Super. 231, 384 A.2d 888 (App.Div.1978), rev'd on other grounds, 79 N.J. 251, 398 A.2d 1271 (1979), Judge Pressler said:
[T]he "unable to continue" language of the rule must be strictly construed and must ordinarily be limited to compelling circumstances which are exclusively personal to the juror in question, and hence which do not and which by their nature cannot raise the specter of either a jury taint or a substantive interference with the ultimate course of the deliberations beyond that necessarily implicit in the effect of new personalities on group dynamics.
[Trent, supra 157 N.J.Super. at 240, 384 A.2d 888. See Valenzuela, supra 136 N.J. at 468, 643 A.2d 582.]
In the instant case, not only was there neither illness nor inability to continue, but the removal was triggered by the State's perception that he might be an unfavorable juror and the removal took place during the second day of deliberations after the jury had reported an 11-1 deadlock. As Justice Stein said in Valenzuela,
The record on which a court may excuse a deliberating juror must reveal with greater clarity that a juror cannot proceed with deliberations and fulfill the function of a juror, particularly when the record contains any suggestion that the problems regarding the juror stem from interactions with the other jurors and not from circumstances "exclusively personal to the juror in question * * *."
[Id. at 472, 643 A.2d 582 (quoting Trent, supra, 157 N.J.Super. at 240, 384 A.2d 888).]
Although our conclusion as to the failure to bar disclosure of the nature of defendant's past crime makes consideration of this issue unnecessary, we feel constrained to indicate our agreement with defendant that the substitution of the new juror was error. Any defect in the integrity of the jury selection process would have been fully and effectively *111 cured by granting defendant's motion for a mistrial.
Reversed.