727 A.2d 468 (1999)
320 N.J. Super. 360
STATE of New Jersey, Plaintiff-Respondent,
v.
Alvin ADAMS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 9, 1999.
Decided April 7, 1999.
*469 Ivelisse Torres, Public Defender, defendant-appellant (Robert L. Sloan, Assistant Deputy Public Defender, of counsel and on the brief).
Patricia A. Hurt, Essex County Prosecutor, plaintiff-respondent (Debra G. Lynch, Assistant Prosecutor, of counsel and on the brief).
Before Judges LONG, KESTIN and WEFING.
The opinion of the court was delivered by KESTIN, J.A.D.
Defendant was convicted of purposeful or knowing murder, felony murder, first degree *470 robbery, second degree burglary, and two counts of second degree conspiracy. After appropriate mergers, he was sentenced to two consecutive terms of imprisonment: a life term with thirty years of parole ineligibility on the murder conviction, and an extended (persistent offender) term for life with twenty years of parole ineligibility on the robbery conviction. VCCB and SNSF assessments totalling $100 and $150, respectively, were ordered.
On appeal, defendant raises the following issues:
POINT I SINCE THE JUROR EXCUSED DURING DELIBERATIONS WAS NEITHER ILL NOR UNABLE TO CONTINUE UNDER R. 1:8-2(D), HIS REMOVAL AND REPLACEMENT WITH AN ALTERNATE JUROR VIOLATED DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL BY AN IMPARTIAL JURY. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10.
POINT II IMPROPER SUMMATION REMARKS DISMISSING DEFENSE COUNSEL'S ARGUMENTS ABOUT THE SUFFICIENCY OF THE STATE'S PROOFS AS "LAWYER TALK," DISPARAGED DEFENSE COUNSEL AND DEPRIVED DEFENDANT OF THE RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL. U.S. CONST. AMENDS. XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10. (Not Raised Below)
POINT III THE IMPOSITION OF CONSECUTIVE SENTENCES FOR RELATED OFFENSES, WITHOUT A STATEMENT OF REASONS, WAS MANIFESTLY EXCESSIVE.
We conclude that the trial judge erred in excusing a juror during deliberations and, accordingly, reverse.
The pertinent facts are as follows. In June, 1990, 81-year-old Lucy Pascale was killed by manual strangulation. Her children, who found the body, also discovered that their mother's bedroom had been ransacked. Defendant, a maintenance man in the victim's building, was originally among the suspects, but the police had no sufficient basis upon which to make an arrest. Defendant and an accomplice were arrested about six years later, following a tip to the police from an informant. With the benefit of the Miranda[*] warnings, defendant gave the police a statement which included some specific details about the crime.
At trial, defendant alleged not only that his statement to the police had been coerced by means of physical force, but also that the police told him what to say in his statement. Defendant's accomplice, who had pled guilty to conspiracy and burglary, also made an allegation of physical coercion when he was cross-examined by defense counsel. A police officer who was present at the interrogation denied the assertions.
The allegation of police coercion had an impact on the jury's deliberations. Fifty-five minutes after deliberations had begun, the judge received a message from one of the jurors stating: "During the first few minutes of the deliberations, [Juror number eight] stated his relative told him that police often beat accused criminals." Juror number eight had disclosed on voir dire that he had a cousin who was a police detective.
Following receipt of the note, the trial judge interviewed juror number eight individually in chambers, on the record, with counsel present, concerning the reported incident in the jury room. The juror stated that his comments had been blown out of proportion, but that whatever statement he had made flowed more from "what I have experienced personally growing up" than from conversations with his cousin. After some colloquy with counsel out of the juror's presence and a further interview with the juror on his capacity to decide the facts based upon the evidence alone, which the juror said he could do, the trial judge determined that juror number eight would be excused. The trial judge had opined that the juror was "interjecting his own experiences [into the deliberations, and] that is not what jurors are supposed to do, they're supposed *471 to decide the case based upon what the evidence is in the case."
The trial judge then interviewed three other jurors individually in chambers, also with counsel present. The juror who had sent the note related what had occurred during deliberations to cause him to write it. The foreperson was next. She also, in somewhat less detail, described what had transpired in the jury room to precipitate the note. The trial judge then asked her if she could decide the matter solely upon the evidence free from extraneous influence. An affirmative response was given. Juror number two was next. He verified that one juror had related what he had been told by a police officer relative, and indicated that, notwithstanding, he could discharge his juror responsibilities fairly and based solely upon the evidence.
In an ensuing colloquy with counsel alone, after the trial judge restated his intention to excuse juror number eight and impanel an alternate, defense counsel moved for a mistrial. The motion was denied. The entire remaining jury panel was then brought into the courtroom and heard a reinstruction from the judge about the jury's general duty to decide the issues based upon the evidence, with a concluding question whether each individual could "decide this case based solely on what you have heard in the courtroom, putting aside any extraneous materials that somebody may have told you in the jury room." Each juror when addressed individually for a response answered in the affirmative. An alternate was then impaneled and the matter was resubmitted to the jury with a supplemental charge.
After reviewing the record, we conclude that the procedures employed by the trial judge to deal with the problem presented amounted to an undue intrusion upon the jury's deliberations, and that the method he chose to resolve the matter was erroneous. Accordingly, the convictions that resulted must be vacated, and the matter remanded for a new trial.
The Sixth Amendment to the United States Constitution and Article I, paragraph 10 of the New Jersey Constitution guarantee the right to trial by an impartial jury, i.e. an unbiased jury that renders a verdict only on the basis of the evidence presented in court, not extraneous material such as outsiders' communications or rumors that circulate within the jury itself. State v. Williams, 93 N.J. 39, 60-61, 459 A.2d 641 (1983). If juror bias is discovered or the jury's deliberations have been tainted by the introduction of extraneous material, the correct remedy depends on the stage of the proceedings that has been reached.
Before deliberations commence, discharge and substitution of any "offending" juror may be warranted if the court determines that the remaining jurors can set aside the extraneous material and decide the case on the basis of the evidence. State v. Hightower, 146 N.J. 239, 254, 680 A.2d 649 (1996) (quoting State v. Trent, 157 N.J.Super. 231, 239, 384 A.2d 888 (App.Div.1978), rev'd on other grounds, 79 N.J. 251, 398 A.2d 1271 (1979)); State v. Nelson, 318 N.J.Super. 242, 723 A.2d 627 (App.Div.1999). Once the case has been given to the jury, however, discharge and substitution is no longer appropriate when juror bias, outside influences, or problems arising in the interaction between jurors are discovered. In such instances, once the court determines that a taint exists, it must discharge the entire jury, i.e., declare a mistrial. Substitution of one juror for another, to address a problem that arises after deliberations have commenced, is not among the choices available to the trial judge, except in limited circumstances. Hightower, supra, 146 N.J. at 254, 255-56, 680 A.2d 649 (quoting Trent, supra, 157 N.J.Super. at 239, 384 A.2d 888).
To ensure the jury's protection from interference on the part of the judge, the remedy of discharge and substitution during deliberations is permitted only in those instances where a juror falls ill or is otherwise unable to continue for strictly personal reasons. R. 1:8-2(d). With respect to the question when a juror may be deemed "unable to continue," the New Jersey Supreme Court has held that
a juror cannot be discharged as "unable to continue" unless the record adequately establishes that the juror suffers from an inability to function that is personal and *472 unrelated to the interaction with the other jury members.
* * * *
We emphasize ... that the fundamental right of fair trial and impartial jury deliberations must be zealously protected.... That protection is not ensured when a court discharges a juror under circumstances that bring into question the integrity of the jury's deliberative function.
[State v. Valenzuela, 136 N.J. 458, 643 A.2d 582 (1994) (citations omitted).]
The facts of Trent, supra, 157 N.J.Super. at 231, 384 A.2d 888, are instructive in this regard. In that case, one juror so strongly identified the defendant with her son that she became upset and ill during deliberations. Id. at 236, 384 A.2d 888. The judge discharged the juror and replaced her with an alternate juror. Id. at 237, 384 A.2d 888. We affirmed, holding that the juror's personal feelings, which physically incapacitated her, were sufficient grounds to excuse her from the jury. Id. at 240, 384 A.2d 888.
By contrast, Hightower, supra, 146 N.J. at 239, 680 A.2d 649, presented circumstances that did not merit removal of a juror. In that capital murder case, during penalty phase deliberations, one juror told the others that the victim had children, a fact that had previously been withheld from the jury. Id. at 250, 680 A.2d 649. After exploring the circumstances, the trial court removed the one juror and proceeded with an alternate juror instead. Ibid. The Supreme Court held that this was error because the reason for removal of the juror did not concern exclusively personal circumstances, as it must. The Court declared:
When a jury is exposed to extraneous information after deliberations have begun, a mistrial will almost always be required.
[Id. at 264, 680 A.2d 649.]
The case before us is factually congruent with Hightower; and we therefore conclude that here, also, the trial court erred in substituting a juror instead of declaring a mistrial. Indeed, it is questionable whether juror number eight's statement amounted to "extraneous material" at all. At least to the extent that that juror made general observations based on his own experiences with police conduct or his own attitudes concerning it, such observations may be viewed as reflections on the credibility of the State's witnesses and the sufficiency of its proofs, subsumed within a juror's right to make experience-based judgments in these connections. Viewed thusly, such observations are at the very heart of the jury function and should be free from interference. See State v. Athorn, 46 N.J. 247, 251-52, 216 A.2d 369, cert. denied, 384 U.S. 962, 86 S.Ct. 1589, 16 L.Ed.2d 674 (1966) (upholding jury verdict because juror's statements, during deliberations, that "cops take bribes" demonstrated a shared experience rather than bias against a defendant police officer).
However, even if the juror's statements constituted extraneous material, any inability to continue on his part was due, not to his personal circumstances, but rather to the threat he was seen to pose to the integrity of the process. The case law is clear that in such an instance, especially where the extraneous material has already intruded into the jury's deliberative processes, a mistrial, rather than substitution is indicated. If a court findsas the trial judge here must be taken to have foundthat the deliberative process has been tainted by improper influences, it cannot hope to save the trial by substitution; a mistrial must follow. If there had been no taint sufficient to warrant a mistrial, then there was no basis for removal of the juror at all.
We conclude that the measure employed by the trial judge compounded the problem it sought to address. By dismissing a juror who arguably had done nothing more than voice an opinion about the quality of the evidence, the judge controlled the jury's deliberations in a manner that requires reversal. See State v. Harvey, 318 N.J.Super. 167, 173-75, 723 A.2d 107 (App.Div.1999).
Our reversal of the conviction renders the remaining points on appeal moot. We add a word about the unacceptable behavior of the prosecutor, however.
*473 In his summation, defense counsel asserted that the inconsistency of the evidence warranted an acquittal, especially in the light of the allegations of police brutality. In response, the prosecutor argued that defense counsel's comments about police brutality were
lawyer talk to divide us somehow, maybe to make us think of something else, but that's only lawyer talk....
Let me tell you what lawyers can do. Lawyers can, any time they want, have a response to a certain answer.
* * * *
We have got an answer for everything. Whatever comes up, the lawyers have a spin they can put on it.
* * * *
Whatever answer [witnesses] give you, the lawyers can make a big deal out of it.
This type of disparaging remark is highly improper. A prosecutor must limit his summation to commenting on the evidence of record and the inferences that may reasonably be drawn therefrom. State v. Farrell, 61 N.J. 99, 103, 293 A.2d 176 (1972). Ad hominem attacks on defense counsel in particular or on defense lawyers in general are not acceptable. State v. Thornton, 38 N.J. 380, 398, 185 A.2d 9 (1962), cert. denied, 374 U.S. 816, 83 S.Ct. 1710, 10 L.Ed.2d 1039 (1963); State v. Sherman, 230 N.J.Super. 10, 552 A.2d 621 (App.Div.1988). While the prosecutor's right to argue his case vigorously is beyond question, it is also undisputed that "[t]he primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done." Canons of Professional Ethics of the American Bar Association, Canon 5. Critical interests of our adversarial system are disserved when the State's
attorney seeks to elevate his position in the eyes of the jury by disparaging the role of defense counsel.
A comment on the sentence imposed is also appropriate. Although an extended term on the robbery count was well warranted, N.J.S.A. 2C:44-3(a), we question the imposition of consecutive terms without an explanation of why consecutiveness was indicated in the circumstances which had been developed. The offenses here involved a single victim and may be seen to have occurred so closely together in time and place, that they may not be subject to characterization as predominantly independent. See State v. Yarbough, 100 N.J. 627, 643-46, 498 A.2d 1239 (1985), cert. denied, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986). Further, the SNSF assessment ordered, in the total amount of $150, was improper because the date of the offense, June 1, 1990, preceded the date when the statute authorizing the SNSF became effective, August 3, 1993. Because retroactive application of criminal penalties is not permitted, State v. J.F., 262 N.J.Super. 539, 542, 621 A.2d 520 (App.Div.1993), the SNSF assessment was without a foundation in law.
Reversed and remanded.
NOTES
[*] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).