837 A.2d 1125 (2003)
365 N.J. Super. 18
STATE of New Jersey, Plaintiff-Respondent,
v.
Leardee JENKINS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 12, 2003.
Decided December 18, 2003.
Linda Mehling, Assistant Deputy Public argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Ms. Mehling, of counsel and on the brief).
James L. McConnell, Assistant Prosecutor argued the cause for respondent (Wayne J. Forrest, Somerset County Prosecutor, attorney; Mr. McConnell, of counsel and on the brief).
Before Judges SKILLMAN,[1] COBURN and FISHER.
The opinion of the court was delivered by FISHER, J.A.D.
A deliberating juror, unsettled by her emotional feelings toward the defendant's predicament, was removed from the jury by the trial judge and replaced by an alternate. Defendant was convicted twenty-three *1126 minutes later. Because the juror's empathy for the defendant was not a circumstance which rendered the juror either ill or otherwise unable to continue deliberating, the trial judge was not permitted to remove her from the jury. As a result, the judgment of conviction will be reversed.
Defendant was charged with robbery in the first degree, in violation of N.J.S.A. 2C:15-1, possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4d, and conspiracy, in violation of N.J.S.A. 2C:5-2. He was convicted on all three counts and sentenced to twelve years imprisonment subject, also, to the No Early Release Act. The mandatory fines, assessments and penalties were also imposed.
Defendant has raised two issues for our consideration:
I. SINCE THE JUROR EXCUSED DURING DELIBERATIONS WAS NEITHER ILL NOR UNABLE TO CONTINUE UNDER R. 1:8-2(d), AND THE JURORS HAD ALREADY REACHED AN ADVANCED STAGE OF DELIBERATIONS, HER REMOVAL AND REPLACEMENT WITH AN ALTERNATE JUROR VIOLATED DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL BY AN IMPARTIAL JURY. U.S. CONST. AMENDS. V, VI, XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10.
II. BECAUSE THE MITIGATING FACTORS FAR OUTWEIGHED THE AGGRAVATING FACTORS IN THIS CASE, AND BECAUSE A DOWNGRADED SENTENCE WOULD HAVE BEEN IN THE INTEREST OF JUSTICE, THE TRIAL JUDGE ERRED IN REFUSING TO SENTENCE DEFENDANT AS A SECOND-DEGREE OFFENDER.
Because we conclude that the removal of a juror during deliberations was erroneous, the judgment of conviction will be reversed. As a result, we need not reach the second point urged by defendant.
After three days of trial, the jury heard the summations of counsel and the trial judge's instructions, which included an admonishment against permitting passion or prejudice to enter into their deliberations:
As jurors, you are to weigh the evidence calmly and without any passion, prejudice, bias, favor, or sympathy of any kind to either side. As you know, any influences that may be caused by those emotional responses to the case deprive both the State and the defense of what you promised in the beginning; that is, a fair and impartial decision based on the evidence.
At 11:38 a.m. the jury began its deliberations. A recess for lunch was taken from 12:30 p.m. to 1:30 p.m. Soon after resuming deliberations, the jury forwarded a note to the trial judge indicating that one juror "has the emotions to affect judgment."
The trial judge called for the juror to come out of the deliberating room to ascertain the nature of the problem:
THE COURT: Come on over. We had a note that there was some problem. I didn't know what it was.
THE JUROR: I thought I could make this decision without emotion, but I can't.
THE COURT: You don't feel you can make a decision here?
THE JUROR: I can't agree with what they want. I can't do it.
THE COURT: You are not required to agree with what they want. Nobody is, you know, forcing you to agree with what they want. Everybody wants you *1127 to vote your own decision in the case. Is there some other problem?
THE JUROR: I'm confused.
THE COURT: You are confused?
THE JUROR: So we have to have a unanimous decision, but
THE COURT: It's a criminal case, and in civil cases they have majority vote. In criminal cases it has to be a unanimous decision.
THE JUROR: It's a very emotional thing for me. I am a black woman. I have children [defendant's] age. II just can't make a decision to put him in jail. I can't do that. I can't do that. Sorry.
....
THE COURT: Well, you understand what the jury charge was; that you decide the case based on the facts and you apply the law to the facts. Now, is it just that you feel that you have kids his age and it's difficult for you to make the decision on the facts, or what is it?
THE JUROR: I can't separate all the other options from the facts. You know, he's a young kid. He did something really stupid, I understand that. Yes, he did something wrong, I understand that. But there doesn't seem to be any room in what we've been asked to do to give the kid a break. I just, you know I see another black man going to jail for something really stupid when there is some really serious crimes out there. They are just walking around lolligagging, you're free, you know, doing whatever. Like I said, it's a very emotional thing. I just
THE COURT: Well, certainly none of us could advise you how to vote. You have to vote how you choose to vote. Nobody here is telling you to vote one way or the other.
THE JUROR: So what are you telling me?
THE COURT: Well, what I'm telling you is that when we gave youwhen we talked to you about jury selection, we indicated that you had to decide the case
THE JUROR: And I had no idea I was going to have this difficulty, believe you me. It hit me by surprise.
THE COURT: Okay.
THE JUROR: I don't consider myself the emotional type. I am really embarrassed to be standing here like this.
THE COURT: That's okay. That's all right. That's all right. We did indicate that you can't decide the case based on bias, favor, or sympathy to one side or the other. We did indicate that to you.
With regard to this, as far as the sentence is concerned, if the defendant is found guilty, the sentence will be up to the Court, and the Court at that time will listen to both attorneys and the defendant and listen to everybody's position, and then consult the statute to figure out what sentence would be appropriate. So if you're focusing on what the sentence is going to be, none of us know what the sentence is going to be at this point. We would have to wait if he's found guilty, go through the presentence report, listen to the arguments of counsel.
The trial judge then excused the juror from side bar and discussed the situation with counsel.
Both counsel consented to an instruction which would remind the juror that she had taken an oath to decide the matter without passion, prejudice, bias or sympathy but that she also was free to vote her own mind. The juror was so instructed. However, in response to the judge's inquiry as to whether she felt she could comply, the juror shook her head in the negative. As a result, the judge correctly resumed his inquiry as to the juror's state of mind:
*1128 THE COURT: You don't feel you can?
THE JUROR: (Shakes head.)
THE COURT: Can you explain that to me a little further, aside from what you already said? I've heard that part. It's just too emotional for you?
THE JUROR: Essentially.
THE COURT: Is there anything that we can do to assist you in your deliberations?
THE JUROR: I don't think so. I knowyou know, I justI just can't see where this kid is going to get a break, that's all. I justyou know, if everybody else wants to send him to jail, let them do it, but I can't be responsible for that. I justI won't do that.
THE COURT: So I take it it's not a decision with regard to the facts and the evidence and the proofs in the case; it's more of an emotional response with you?
THE JUROR: Yes, it is. I said that. Absolutely.
THE COURT: Okay. And you don't feel going back in there, continuing deliberations
THE JUROR: They are notno, I don't seehow is that going to change anything?
THE COURT: I am just asking. I don't know. I am not in there.
....
THE COURT: I take it as far as the facts of the case are concerned, setting aside the emotional aspect of the case, but strictly the facts, I take it that you participated in those deliberations and you've solved the facts, dilemma, for yourself?
THE JUROR: Pretty much.
....
The juror was asked to step aside and the trial judge again discussed the matter with counsel. The prosecutor argued that the juror should be excused because her emotional reaction and sympathy for the defendant was causing her to disregard her oath. Defense counsel argued that the juror was feeling pressure from the other jurors because they apparently were not considering any other "options" and because a vote was likely taken where she was the only person voting the opposite way. Defense counsel argued that the juror should remain on the jury.
Following a short recess, the trial judge again called the juror back to side bar:
THE COURT: It's just a couple more questions because we've been talking about it trying to figure out what to do with this.
With regard to the problem in continuing deliberations, with regard to that, you've indicated to me that it would be fruitless; you would be unable to go back and continue deliberations.
THE JUROR: Expand on that. I mean, what do you mean by
THE COURT: Well
THE JUROR: I wouldI could go back, but I am gonnanot gonna change my mind or nothing that is going to make me feel any different.
THE COURT: Okay. Well, let me just ask this question. If you went back into deliberations, do you feel that you would be talking about the facts and the evidence in the case or it's just this emotional aspect?
THE JUROR: No. No facts. Utuh. I mean, the facts are what they are. That wouldn'tit's not going to change how I am feeling one way or the other.
THE COURT: Okay. Are any of the other jurors putting any pressure on you?
THE JUROR: No, no, absolutely not. No.
THE COURT: They are not pressuring you at all?
THE JUROR: No, no, no.

*1129 THE COURT: So do I have it right, that as far as the decision on this case is concerned, that it's just down to the emotional aspect; that you are not willing to vote the way that you would otherwise vote because you have this identity with the defendant?
THE JUROR: Uh-huh.
THE COURT: Other than that, you would vote?
THE JUROR: Vote what?
THE COURT: With the other jurors I take it.
THE JUROR: Say that again.
THE COURT: But for the emotional factor, would this case already be resolved?
THE JUROR: Yeah.
THE COURT: Okay. So, basically if I have it right, what is preventing you from finishing out deliberations is your emotional involvement with the case
THE JUROR: Uh-huh.
Once more the trial judge heard the views of counsel. The prosecutor argued that the juror was not separating her emotions from the facts or adhering to her oath and should be discharged. Defense counsel objected to removal. The trial judge decided to remove the juror. He based this determination on the juror's "emotional response" to the facts and circumstances of the case, summarizing her quandary in the following way: "[S]he is a black woman and this is a young black man, and she's not going to be involved in a case that would send another young black man to prison." The trial judge's ruling did not include a finding that the juror's emotional feelings were rendering her ill or were otherwise prohibiting her from continuing to deliberate and we would observe that the juror's statements, which have been quoted at length, would not support such findings.
An alternate was selected to replace the removed juror and the trial judge correctly charged the entire jury that they should begin their deliberations anew. Twenty-three minutes later, the reconstituted jury returned a guilty verdict on all three counts.
R. 1:8-2(d)(1) provides the framework for determining whether a juror may be removed once deliberations have begun:
[I]f at any time after submission of the case to the jury, a juror dies or is discharged by the court because of illness or other inability to continue, the court may direct the clerk to draw the name of an alternate juror to take the place of the juror who is deceased or discharged....
Our Supreme Court has held that a careful application of this rule does not offend the constitutional guaranty of trial by jury. State v. Miller, 76 N.J. 392, 406, 388 A.2d 218 (1978). The Court has, however, emphasized that the "death" and "illness" standards "are narrow," and, while the "inability-to-continue" standard is "somewhat vague and broad," it too must be "construed and applied ... narrowly." State v. Williams, 171 N.J. 151, 163, 793 A.2d 594 (2002).
To remove a juror under the "inability-to-continue" standard, the Court has declared that
the record [must] adequately establish... that the juror suffers from an inability to function that is personal and unrelated to the juror's interaction with the other jury members. If a court suspects that the problems with the juror are due to interactions with other jurors, the court should instruct the jury to resume deliberations.
[Id. at 164, 793 A.2d 594, quoting State v. Hightower, 146 N.J. 239, 254, 680 A.2d 649 (1996).]
This same approach was adopted in State v. Trent, 157 N.J.Super. 231, 384 A.2d 888 (App.Div.1978), rev'd on other *1130 grounds, 79 N.J. 251, 398 A.2d 1271 (1979). While the Supreme Court, as observed above, has since described the precise standard to be followed in such situations, Trent has particular relevance here, since the facts are similar and yet exhibit one particular and highly relevant distinction.
In Trent, we described the boundaries of illness and "inability-to-continue," for substitution of an alternate juror during deliberations, in terms similar to those later adopted in Williams and Hightower:
Because they relate exclusively to the personal situation of the juror himself and not to his interaction with the other jurors or with the case itself, they are ordinarily not circumstances having the capacity to affect the substance or the course of the deliberations. Hence the continuation of the trial with a substituted alternate is in these circumstances no way violative of defendant's right to trial by a fair and impartial jury. In this respect the "unable to continue" standard is much narrower than the concept of good cause requiring the discharge of prospective jurors before trial commences.
[157 N.J.Super. at 239, 384 A.2d 888.]
In Trent, after approximately six hours of deliberations, a note was sent from a juror to the trial judge stating "I am getting sick." Id. at 236, 384 A.2d 888. Both counsel and the juror were brought into the judge's chambers. In response to the judge's question of "[w]hat is wrong," the following colloquy took place:
THE JUROR: I just feel nervous. I have a headache and everything. I'm just I don't know.
THE COURT: You are just nervous and have a headache?
THE JUROR: I have a headache and feel like I want to spit up, just too emotional.

THE COURT: All right. You feel if you took a break or something you'll feel better?
THE JUROR: When I close my eyes I guess I'm just too easily get emotional, you know, when children is involved because I have children myself and it just hard for me to make a decision. I'm just all upset. I tried, you know, to go through with it but just because every time I see him sitting there I can picture my son sitting there. He's about 17 and it is just too much. I can't take no more.
[Id. at 235-36, 384 A.2d 888 (emphasis added).]
The trial court in Trent, against the urging of defense counsel, found the juror to be "physically and emotionally disturbed" and excused her for good cause. Id. at 236-37, 384 A.2d 888. On appeal, we deemed the trial court's findings regarding physical and emotional distress sufficient to warrant excusal:
That her disabling distress was engendered by her identification of defendant with her own son did not make it any less incapacitating insofar as her ability to function was concerned than if the cause thereof had been totally unrelated to the trial. Nor it is argued that either her distress or its cause tainted or infected the jury as a whole, and we are unable to perceive that it in fact did. In short, it was not the fact of her bias which resulted in her removal from the jury but rather the fact that her bias incapacitated her.

[Id. at 240, 384 A.2d 888 (emphasis added).]
Trent is similar to the present case in that the juror in Trent, like the removed juror here, empathized with the defendant as she would have for one of her own children and because both jurors described their quandary as emotional. The difference, *1131 however, is that the Trent juror described her emotions as having caused physical illness. No such claim was made here by the removed juror. When the trial judge inquired about the juror's ability to continue deliberating, the juror acknowledged her ability to do so, insisting only that she would be unable to change her feelings about the matter: "I wouldI could go back, but I am gonnanot gonna change my mind or nothing that is going to make me feel any different." This difference between Trent and the case at hand compels a result different from Trent. Whereas Trent found no abuse of discretion in the removal of the juror, we conclude that the juror here did not suggest any inability on her part to continue to deliberate.
The trial judge here did not find that the juror's emotional quandary caused an illness as in Trent or that the reasons for excusing her were personal to the juror. Instead, the record demonstrates that the juror only exhibited an apparent inability to allow her intellect to overcome her sympathy and bias for the defendant. Accordingly, R. 1:8-2 provided no basis for her removal.
The juror's feelings may have interfered with her ability to follow the trial judge's instructions but they did not constitute a valid basis for removing her from the jury. In such circumstances, the trial judge could have declared a mistrial, Hightower, supra, 146 N.J. at 262, 680 A.2d 649; Trent, supra, 157 N.J.Super. at 239, 384 A.2d 888, or allowed deliberations to continue. Removal of the juror, however, was not authorized in these circumstances.
Reversed.
NOTES
[1] Judge Skillman did not participate in oral argument. However, the parties consented to his participation in the decision.