Reversed and remanded for further proceedings consistent with this opinion.

749 A.2d 417

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. PABLO CRUZ, JR., A/K/A/ SANTOS SAMOL,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted April 4, 2000—Decided April 25, 2000.

276

Before Judges PRESSLER, CIANCIA and ARNOLD.

*Ivelisse Torres*, Public Defender, attorney for appellant (*Paul D. DiGiacomo*, Designated Counsel, of counsel and on the brief).

*William H. Schmidt*, Bergen County Prosecutor, attorney for respondent (*Nicholas Ostuni*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

CIANCIA, J.A.D.

Following a jury trial, defendant Pablo Cruz, Jr. was found guilty of second degree possession of cocaine with intent to distribute, *N.J.S.A.* 2C:35–5a(1) and –5b(2) (count one) and two counts of third degree possession of cocaine, *N.J.S.A.* 2C:35–10a(1)(counts two and three). On count one he was sentenced to five years imprisonment and on count three he was sentenced to a concurrent three-year term. The sentencing judge merged count two into count one. Appropriate fees and penalties were imposed.

■ The sole issue on appeal concerns the propriety of removing a juror during the course of deliberations and replacing her with an alternate. On the facts presented we find that the juror's removal was unwarranted and constituted reversible error.

For present purposes we need not recount all the evidence elicited at trial. Suffice it to say that the State's case, if credited, showed that the State Police pulled over a vehicle driven by defendant and occupied by three other persons, because the car

had been tailgating. Defendant did not have a valid driver's license nor did any of the passengers. Conversation with the vehicle's occupants aroused the trooper's suspicions and defendant was asked if he would consent to a search of the car. Defendant agreed and signed the appropriate form. The search revealed a shopping bag which contained a pair of jeans and two bags of a substance later determined to be cocaine. Defendant and his companions were arrested and searched. The search of defendant produced additional cocaine. One of the passengers possessed approximately a hundred zip-lock bags and some marijuana.

The initial voir dire of prospective jurors was uneventful, including that of juror number two, who was later to be removed from the panel during deliberations. On the morning of the second day of trial juror number two asked to speak to the judge. Outside the presence of the other jurors she told the judge and counsel, apparently without elaboration [1] that she had been stopped by the police in the past and might be biased against the police. When asked if her experience had "anything to do with this case," she responded that it did not. The judge said he would not excuse the juror and she returned to the room where the other jurors were awaiting the resumption of trial. The prosecutor then requested that juror number two be made an alternate. There was no request that she be dismissed. Defense counsel took the position that the case being tried did not involve a challenge to the actions of the police in stopping defendant's vehicle and conducting searches. Therefore, the experience of juror number two really had no relationship to the case she was hearing. The trial judge agreed that the case being tried turned on defendant's knowledge and possession of drugs, not on the propriety of any police activity. He accordingly denied the prosecutor's request to designate juror number two as an alternate. The trial continued and juror number two made no further requests. As it turned out she was not selected as an alternate. After jury deliberations had been

---

[1] The recording equipment failed to record all the actual statements of juror number two, but they were repeated by the trial judge and counsel.

underway for about thirty minutes, the prosecutor made application to the court for a further voir dire of juror number two because "we didn't get a full inquiry." This request was also based upon the assertion that the juror had smiled at the defendant before the start of deliberations. In response to this request the trial judge stayed deliberations and called juror number two into chambers where the following colloquy ensued:

THE COURT: All right, I want to make some further inquiry as to what you brought to our attention this morning, that you felt that you are biased and unable to stay on this case. Tell me more about that.

JUROR: Well, it was just a minor traffic violation. One of my headlights was out—

THE COURT: No, I don't want to know about the incident so much as I want to know about your ability to function on the jury.

JUROR: To function on the jury? Because I just see a lot of doubt in the case, when I first listened to it.

THE COURT: Wait a minute. See, it's very difficult what we're talking about now. Don't want you to disclose anything that's been going on for the last half hour with deliberations with your fellow jurors. That's not why I'm here.

There has been some concern raised as to your ability to be fair and impartial because of what you brought up this morning. And I had asked you did it have anything to do with this case and your answer was no, it didn't, right?

JUROR: Right.

THE COURT: And it's because of past experiences that you—well, maybe you ought to tell us about the past experience so I can make a record of it.

JUROR: That's what I was trying to say.

THE COURT: Okay.

JUROR: And when the police officer stopped me, right away he assumed that I had drugs in the car, asked me to step out of the car, got a flashlight and started looking in the car and says to me, so why are you over here in the city, and quickly assumed that I was, you know, there to purchase drugs because I have a New Jersey license plate. And it was just words were exchanged and I thought he was really out of order in questioning me because of the light on my car. And then he just got deeper into the drug thing.

So anyway, I was given a ticket. I had to get the light fixed and everything like that, and I thought that this would be bias on my part in being on the jury.

THE COURT: All right, so what is this?

JUROR: What is it?

THE COURT: Yes, is it bias? Can you function as a juror?

JUROR: No, I can't.

THE COURT: When the issue is not the stop at all?

JUROR: Excuse me?

THE COURT: The issue in this case is not the police stopping the man, the issue is—

JUROR: Drugs period.

THE COURT: What do you mean drugs period?

JUROR: Meaning the whole case of the drugs. I don't want any part of being there and giving a guilty or not guilty—

THE COURT: Weren't you asked that when we first started the case?

JUROR: Yes, I was, and I thought I could handle it until the second day after I thought about it and I slept on it. I can't. I'm giving you my honest feelings.

THE COURT: I know you are.

I'm going to ask you to—you can't give any opinion one way or another when it comes to drugs?

JUROR: Yeah, I can give an opinion—

THE COURT: As to guilt or innocence, make a determination as to guilty or innocence? It's not because of any fellow jurors, is it?

JUROR: No. It's like well certain parts of the case I can say okay, yeah, and then certain parts I can say no, I mean.

THE COURT: ALL RIGHT, I want you to go back into the jury room and do not discuss what we just discussed with your fellow jurors. All right?

JUROR: Okay.

THE COURT: Thank you.

JUROR: You're welcome.

The prosecutor then argued for the juror's dismissal because she could not be fair and impartial. Defense counsel responded that nothing had really changed from the prior interview of the juror and she should be allowed to remain on the jury. The trial judge recognized that a juror cannot be discharged just because that juror's views may be at odds with other jurors. He found, however, that juror number two was "unable to function" at this point because of her personal experiences. He then removed juror number two and replaced her with an alternate. The jury was instructed to "set aside and disregard" all "past deliberations" and begin deliberations anew. The trial judge emphasized that the previous deliberations that had included juror number two were not to have any impact on the new deliberations that were about to begin. Jurors were not to speculate as to the reasons for the removal of juror number two. Deliberations resumed and in

approximately seventy-five minutes a verdict was returned against defendant.

In our view jury deliberations should not have been interrupted for further inquiry of juror number two merely because the State wanted to explore further her prior statements or because she "smiled" at the defendant. More significantly, juror number two should not have been excused as being unable to continue. *R.* 1:8–2(d)(1). Putting aside for the moment the question of possible bias, it is clear juror number two did not demonstrate an "inability to continue" as that phrase has been interpreted. In *State v. Hightower,* 146 *N.J.* 239, 254, 680 *A.*2d 649 (1996), our Supreme Court said the "inability-to-continue" standard is to be narrowly construed and sparingly applied, (citing *State v. Valenzuela,* 136 *N.J.* 458, 468, 643 *A.*2d 582 (1994) and *State v. Trent,* 157 *N.J.Super.* 231, 240, 384 *A.*2d 888 (App.Div. 1978), *rev'd on other grounds,* 79 *N.J.* 251, 398 *A.*2d 1271 (1979)). Removal of a juror is warranted when that juror suffers from an inability to function that is exclusively personal and unrelated to the juror's interaction with other jury members. The standard may be invoked to remove a juror when the record reveals that the juror's emotional condition renders him or her unable to render a fair verdict. It is not properly invoked to remove a deliberating juror when the record merely reveals that the juror has a position that is different from that of other jurors. *Hightower, supra,* 146 *N.J.* at 254–255, 680 *A.*2d 649.

The discussion with juror number two never produced the level of information that was necessary to justify her removal. Although she said she could not function, it appears she was doing just that when the State asked the court to revisit her status. That the juror had a personal experience that may have colored her view of police activities does not constitute the personal inability to go forward contemplated by our case law. The State's real concern was the juror's possible threat to the integrity of the process, not her inability to go forward to a decision. Had the State's concern been valid then the proper remedy would have

been a mistrial. *Hightower, supra,* 146 *N.J.* at 254–255, 680 *A.*2d 649 (citing *State v. Trent, supra,* 157 *N.J.Super.* at 239, 384 *A.*2d 888). But even the State's concern of possible bias was not appropriate on the information provided by juror number two. As we said in *State v. Adams,* 320 *N.J.Super.* 360, 368, 727 *A.*2d 468 (App.Div.), *certif. denied,* 161 *N.J.* 333, 736 *A.*2d 526 (1999):

> At least to the extent that the juror made general observations based on his own experiences with police conduct or his own attitudes concerning it, such observations may be viewed as reflections on the credibility of the State's witnesses and the sufficiency of its proofs, subsumed within a juror's right to make experience-based judgments in these connections. Viewed thusly, such observations are at the very heart of the jury function and should be free from interference. *See State v. Athorn,* 46 *N.J.* 247, 251–52, 216 *A.*2d 369, *cert. denied,* 384 *U.S.* 962, 86 *S.Ct.* 1589, 16 *L.Ed.*2d 674 (1966) (upholding jury verdict because juror's statements, during deliberations, that "cops take bribes" demonstrated a shared experience rather than bias against a defendant police officer).

> [*Id.* at 368–369, 727 *A.*2d 468.]

Here, we know the juror had an opinion about the police stopping motorists but such an opinion did not go to the heart of the State's case and there was no indication that her opinion had been shared with other jurors. Moreover, as *Adams* makes clear, even if that opinion had been shared it would not necessarily have constituted a basis for a mistrial.

For these reasons we believe the dismissal of juror number two was clearly not warranted and constituted reversible error. Defendant's judgment of conviction is reversed and the matter is remanded for further proceedings.