**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2423-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ALI BASS,
a/k/a ALIF BASS,
a/k/a LADON BAY,
a/k/a MURAD BORNS,

    Defendant-Appellant.

_____

        Argued September 19, 2017 — Decided October 12, 2017

        Before Judges Yannotti and Mawla.

        On appeal from Superior Court of New Jersey,
        Law Division, Essex County, Indictment No. 11-
        11-2085.

        Thomas R. Ashley argued the cause for
        appellant.

        Kayla Elizabeth Rowe, Special Deputy Attorney
        General/Acting Assistant Prosecutor, argued
        the cause for respondent (Robert D. Laurino,
        Acting Essex County Prosecutor, attorney; Ms.
        Rowe, of counsel and on the brief).

PER CURIAM

On November 5, 2015, a jury convicted defendant Ali Bass of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(6), fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d), second-degree eluding, N.J.S.A. 2C:29-2(b), and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a). On December 23, 2015, defendant was sentenced to twenty years imprisonment with an eighty-five percent parole disqualifier under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, for the aggravated assault conviction; a ten year prison term with a five year period of parole ineligibility for the eluding conviction; and an eighteen year prison term for resisting arrest and unlawful possession of a weapon convictions. All sentences were to run concurrently. Defendant appeals from the convictions and the sentence. We affirm.

The following facts are taken from the record. On December 11, 2009, Newark Police Detective Anna Colon was on patrol and observed defendant driving a vehicle on Irvine Turner Boulevard. Detective Colon activated her lights and siren to pull over defendant because he was not wearing a seatbelt. Defendant made a quick u-turn and a chase ensued, joined by another vehicle operated by Sergeant Thomas Rowe with Detective Jose V. Torres as its passenger.

Defendant's vehicle crossed the double line into oncoming traffic and collided head-on with another vehicle, causing the other vehicle to become air borne and land on its side. As Detective Colon approached defendant's vehicle, the front passenger, Arsenio Payton, fled from the vehicle. Payton was apprehended by another officer. Detective Colon discovered defendant attempting to push himself into the back seat of the vehicle. Defendant's left leg was broken and wrapped around the driver's seat. He was arrested.

Payton subsequently pled to separate charges. As a part of his plea, he testified he was the passenger of the automobile involved in the chase.

Defendant's trial ensued and resulted in his convictions and sentence from which he now appeals. On appeal, defendant raises the following arguments:

> POINT ONE - THE REFUSAL OF THE COURT BELOW TO UNDERTAKE THE MANDATORY <u>BEY</u> PROCEDURE, REGARDING MID-TRIAL PUBLICITY, VIOLATED DEFENDANT'S RIGHT TO A FAIR TRIAL.
>
> POINT TWO - PERMITTING THE STATE IN SUMMATION TO MAKE THE BASELESS INFERENCE THAT DEFENSE COUNSEL INFLUENCED WITNESS PAYTON TO FALSELY TESTIFY, WHICH WAS COMPOUNDED BY THE COURT BELOW REFUSING TO GIVE A CURATIVE INSTRUCTION, WAS HARMFUL REVERSIBLE ERROR WITH THE CLEAR CAPACITY TO PRODUCE AN UNJUST RESULT.

POINT THREE - DEFENDANT'S SENTENCE IS ILLEGAL
AS IT IS THE PRODUCT OF MULTIPLE DISCRETIONARY
ENHANCEMENTS.

I.

Defendant argues he was deprived the right to a fair trial because he informed the trial court of an NJ.com article referencing his separate impending murder trials, and his trial in the instant case. The article in question, entitled "Man charged in 3 murders on trial for wrong-way crash in police chase," appeared on October 23, 2015, after trial had commenced.[1]

Defendant requested the trial court ask the jurors regarding whether any of them had read the article, but the court declined noting it had previously instructed the jury to avoid any trial publicity regarding the trial. Defendant asserts the trial court erred by refusing to poll the jury pursuant to State v. Bey, 112 N.J. 45 (1988), to determine whether any jurors were exposed to the publicity surrounding the trial. We disagree.

In Bey, the Court determined where there is publicity during a trial, "[i]f the court is satisfied that the published information has the capacity to prejudice the defendant, it should determine if there is a realistic possibility that such information

---

[1] A second article entitled "Accused murderer says he was not driver in crash during police chase," appeared on October 29, 2015, the fifth day of trial, but counsel never addressed its existence with the trial court.

A-2423-15T2

may have reached one or more of the jurors." Id. at 86. If there is such a realistic possibility, a voir dire must be conducted to ascertain whether any juror has been exposed. Id. at 86-87. The trial court then must determine whether the mid-trial publicity had a "great[er] capacity to prejudice a defendant's case," and where the publicity had such a strong potential for prejudice, the usual assumptions about jurors following their oaths and adhering to the judge's instructions are not warranted. Id. at 81-83, 90; see also State v. Mejia, 141 N.J. 475, 514 (1995) (Handler, J., concurring) (quoting Bey, supra, 112 N.J. at 81-90).

We review a decision to conduct a Bey voir dire for abuse of discretion. State v. Tindell, 417 N.J. Super. 530, 564 (App. Div. 2011), certif. denied, 213 N.J. 388 (2013). This is because "[c]ases of presumed prejudice due to pretrial publicity are 'relatively rare and arise out of the most extreme circumstances.'" State v. Harris, 156 N.J. 122, 143 (1998) (quoting State v. Koedatich, 112 N.J. 225, 269 (1988), cert. denied, 488 U.S. 1017, 109 S. Ct. 813, 102 L. Ed. 2d 803 (1989)).

The publicity in this matter was limited to an article defense counsel initially identified at the onset of trial, and a second one which later appeared that counsel did not address. This form of publicity was not the sort of "extreme circumstances" warranting a Bey voir dire.

As noted by the State, the trial court instructed the jury four times regarding the avoidance of trial publicity throughout the trial. Importantly, the trial court instructed the jury before the NJ.com article was published, both during the jury selection voir dire and after the jury was empaneled. The trial court's instruction was clear:

> You are not to read or have anyone read to you any newspaper accounts about any issue or person or matter involved in this case. You're not to search the internet for any media accounts about the trial or search any papers or magazines for any information about anyone or anything involved in this case.

On the third day of trial, before the jury returned to the courtroom, defense counsel raised a concern that he had learned of the NJ.com article, which also featured a photograph of defendant. Defense counsel indicated he had not read the article, but wanted to bring the matter to the trial court's attention. Defense counsel stated:

> I am not priv[y] to the article, your honor, and I did not see it myself. I just heard of it. I just want the court to know that what I'm saying is hearsay. But it's my understanding that that's what was told to me.
>
> So if that is the case, which I have no reason to believe it's not, then I would leave it to the court's discretion with respect to ensuring that none of the jurors actually read or heard about the article.

6

After the state objected to the request that the judge question the jury about the article, the trial court declined to instruct the jury again on trial publicity because the instruction had been given twice before. The trial court explained:

> Okay. I continuously instructed the jury not to do an investigation, nor contact, nor research, . . . but more importantly I've instructed them to immediately bring it to the attention of the court if they had inadvertently seen or heard, or been subject to any information concerning anything involved in this trial, or anyone involved in this trial.
>
> I don't see any reason to reinstruct them on that. I don't see any reason to take any further action with reference to that article or any article that may be out there somewhere.

The NJ.com article was raised again during defense counsel's cross-examination of Detective Torres. Defense counsel asked Detective Torres whether he had seen photographs of defendant. The trial court permitted the question over the State's objection on relevancy grounds and Detective Torres answered: "Just whatever was on NJ.com."

The State renewed its objection and a sidebar ensued where the State asserted that the defense did not have a good faith reason to ask such a question. Defense counsel responded that the point of the question was not to inform the jury about the existence of the NJ.com article, but to test the credibility of

Detective Torres's testimony regarding his identification of defendant.

Defense counsel explained: "So what I'm saying is for five years [Detective Torres] hasn't seen this individual. [Detective Torres] saw [defendant] for a matter of seconds and he was able to identify him in court." The trial court accepted the defense counsel's rationale and instructed the jury to disregard Detective Torres's reference to what he saw on NJ.com.

After the conclusion of testimony and summations, the trial court charged the jury before deliberations, and again instructed the jurors not to conduct research of their own. After a lunch break, the jury returned to begin deliberations, which lasted until the following day. At the conclusion of the first day of deliberations, the trial court again instructed the jury to conduct "[n]o research about anyone or any issue involved in this case[.]"

Under these circumstances, we cannot conclude the trial publicity required a Bey voir dire. The jury was repeatedly instructed to refrain from reading outside sources before and after the article was published. The record lacks evidence there was a realistic probability the information reached the jury. There is no evidence of strong publicity of the sort that would prejudice defendant. Thus, a Bey voir dire was not triggered by

the publication of the article and the trial judge did not abuse his discretion by declining to voir dire the jury.

## II.

Next, defendant asserts the prosecutor's statement in summation that defense counsel improperly influenced Payton to testify in defendant's favor was prejudicial error. Defendant asserts the court's refusal to give a curative instruction compounded the prosecutor's error and warrants reversal. We disagree.

As noted above, at his plea proceeding Payton testified that he was the passenger in the vehicle operated by defendant. At trial, Payton was called to testify for defendant and changed his testimony. Payton testified that he had written a letter to defense counsel claiming he was the driver of the vehicle. He further testified on cross-examination that defense counsel had visited him before the trial. Without an objection from defense counsel, the following colloquy occurred:

> [PROSECUTOR:] And you had an opportunity to speak to [defense counsel]. Is that correct?
>
> [PAYTON:] Yes.
>
> [PROSECUTOR:] Okay. And did you guys discuss what you were going to be talking about today?
>
> [PAYTON:] No.

[PROSECUTOR:] Okay. So [defense counsel] just paid you a visit and then left? I don't understand.

[PAYTON:] Yes, I was telling him that I was the driver of the vehicle.

[PROSECUTOR:] Okay. So you did talk to him about this case. Is that correct?

[PAYTON:] Yes.

In summation, defense counsel argued Payton's testimony was credible because he had not been intimidated by defendant or anyone on defendant's behalf, namely, defense counsel. Defense counsel stated:

> So in any event, going over his testimony that [defense counsel had] seen [Payton] three times (indiscernible).
>
> . . . you've heard testimony that [defendant] visited [] Payton while he was in jail . . . Now this was after the letter not before the letter, after the letter. So any suggestion that [defendant] intimidated [Payton] in this visit is wrong because he came after . . . I received the letter. And there's no evidence except the mere suggestion of the State that anything untoward happened there.

On summation, the prosecutor responded to defense counsel's remarks. The prosecutor argued: "So ladies and gentlemen, [defense counsel] went [to visit Payton] to discuss this case. But you don't need to prep someone three times to tell the truth[.]"

Appellate review focuses on the prosecutor's alleged misstatements and their collective effect, if any, on a defendant's

right to a fair trial.  We evaluate "the severity of the misconduct and its prejudicial effect on the defendant's right to a fair trial" and conclude whether "prosecutorial misconduct is not grounds for reversal of a criminal conviction unless the conduct was so egregious as to deprive defendant of a fair trial."  State v. Papasavvas, 163 N.J. 565, 625 (2000) (quoting State v. Timmendequas, 161 N.J. 515, 575-76, cert. denied, 534 U.S. 858, 122 S. Ct. 136, 151 L. Ed. 2d 89 (2001)).  Thus, "[t]o justify reversal, the prosecutor's conduct must have been clearly and unmistakably improper, and must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense."  Id. at 616 (quoting Timmendequas, supra, 161 N.J. at 575).

"A prosecutor in a criminal case is expected to make a vigorous and forceful closing argument to the jury. . . . Prosecuting attorneys are afforded considerable leeway if their comments are reasonably related to the scope of the evidence before the jury."  State v. Harris, 141 N.J. 525, 559 (1995).  However, "[a]d hominem attacks on defense counsel in particular or on defense lawyers in general are not acceptable."  State v. Adams, 320 N.J. Super. 360, 370 (App. Div.), certif. denied, 161 N.J. 333 (1999) (emphasis omitted) (citing State v. Thornton, 38 N.J. 380, 398 (1962), cert. denied, 374 U.S. 816, 83 S. Ct. 1710, 10 L. Ed.

2d 1039 (1963)). "[W]hile a prosecutor's summation is not without bounds, '[s]o long as he stays within the evidence and the legitimate inferences therefrom the Prosecutor is entitled to wide latitude in his summation.'" State v. Wakefield, 190 N.J. 397, 457 (2007) (quoting State v. Mayberry, 52 N.J. 413, 437 (1968), cert. denied, 393 U.S. 1043, 89 S. Ct. 673, 21 L. Ed. 2d 593 (1969)).

Here, placed in context, the prosecutor's comments regarding defense counsel's three visits to Payton were permissible. It was defense counsel who first raised and addressed the issue of the visits and Payton's credibility, both during the testimony and summation phases of the trial. Indeed, defense counsel argued Payton's testimony in the 2010 plea colloquy was perjury. Also, defense counsel's summation attempted to bolster Payton's credibility, as the key witness, by explaining Payton's motivation for coming forward with his story, why he wrote to defense counsel, and why defense counsel visited him three times. Because Payton's trial testimony contradicted his 2010 plea, and only one version of the testimony could be true, the prosecutor was free to challenge Payton's credibility regarding the reasons for the change in his testimony.

We reject defendant's claim the prosecutor improperly suggested defense counsel personally influenced Payton to change

his testimony. Payton's credibility was a key issue, and whether he committed perjury or was influenced to change his testimony was a decision for the jury to make. The gravamen of the prosecutor's remark was to explain to the jury the State's view of the facts in evidence. This conduct was neither egregious nor did it deprive defendant of a fair trial in any discernable way. Thus, the trial court did not err by refusing to issue a curative instruction under these circumstances.

### III.

Lastly, defendant argues his sentence for aggravated assault is illegal because the imposition of an extended sentence of twenty years, with seventeen years parole ineligibility under NERA, should have been based on the maximum ordinary term, not the extended term. We find no merit to this claim.

Sentencing determinations are reviewed on appeal under a highly deferential standard. State v. Fuentes, 217 N.J. 57, 70 (2014). We review sentences imposed by the trial court for an abuse of discretion. State v. Megargel, 143 N.J. 484, 493-94 (1996).

A sentencing court may apply an extended sentence pursuant to N.J.S.A. 2C:43-7, if the court finds a defendant to be a persistent offender pursuant to N.J.S.A. 2C:44-3. Defendants

13

convicted of a second-degree crime may be sentenced to an extended term between ten and twenty years.  N.J.S.A. 2C:43-7.

Defendant does not challenge the trial court's ability to impose an extended sentence for his aggravated assault conviction or that he is a persistent offender.  His conviction for aggravated assault is a second degree offense that is subject to a mandatory NERA parole disqualifier.   N.J.S.A. 2C:42-7.2(d)(4); N.J.S.A. 2C:12-1(b)(6).

Rather, in asserting his claim that his NERA period of parole ineligibility may only be based on the maximum ordinary term defendant relies upon State v. Allen, 337 N.J. Super. 259, 273-74 (App. Div. 2001), certif. denied, 171 N.J. 43 (2002).  In Allen, we held "the imposition of an extended term for a first or second degree 'violent crime' (as defined in N.J.S.A. 2C:43-7.2(d)) must embody a parole ineligibility term at least equal to the NERA sentence applicable to the maximum ordinary term for the degree of crime involved."  Allen, supra, 337 N.J. Super. at 273-74.

Defendant misreads the holding in Allen.  We did not restrict the imposition of an extended sentence to the maximum ordinary term.  Instead we noted the "imposition of a mandatory or discretionary ineligibility term on an extended term sentence could be longer if required or authorized by statute."  Id. at 274.

Therefore, the trial court properly sentenced defendant to a twenty-year extended term, and properly applied the eighty-five percent minimum NERA term of parole eligibility to the extended term, as set forth in Allen. Ibid.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION